■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v J.F. MONTGOMERY, Appellant. [803 NYS2d 228]—

Kane, J. Appeal from a judgment of the County Court of Tioga County (Sgueglia, J.), rendered May 23, 2003, upon a verdict convicting defendant of the crimes of sodomy in the first degree, sexual abuse in the first degree, forcible touching and endangering the welfare of a child.

A jury convicted defendant of sodomy in the first degree, sexual abuse in the first degree, forcible touching and endangering the welfare of a child based on allegations that he placed his mouth on the 15-year-old victim's vagina and digitally penetrated her vagina through the use of physical force while threatening her with a knife. Although we disagree with defendant's argument that the verdict was against the weight of the evidence, we reverse based on the lack of necessary limiting instructions.

The victim testified that while watching a movie with defendant and his girlfriend, defendant began rubbing her thighs, belly and breasts. After she and the girlfriend protested, defendant ordered the girlfriend out of the room. He then obtained a knife, which he held to the victim's throat while telling her to lower her pants. She did not comply, so he lowered her pants, pushed her onto the couch and placed his mouth on her vagina. When she resisted, he slapped her face, then placed his fingers in her vagina. As she continued to struggle, he threw her to the floor and told her to leave, ordering her to return the following day so he could "screw" her and threatening her not to tell. She went home, where her family noticed that she was upset, discovered what had happened and called the police. The victim's mother and sister testified that the victim returned home that evening shaken and upset, and eventually revealed the abuse she had suffered. Police officers testified about her split lip, upset emotional state and statements that night. A

registered nurse who examined the victim, and a forensic pediatrician who reviewed the medical records, opined that the victim's minor injuries were consistent with her version of events.

Defendant presented a medical expert who testified that the examination results were inconclusive and the physical evidence alone was not indicative of sexual assault. Defendant's girlfriend testified that nothing happened on the night in question, although she had given police two contradictory statements, one of which implicated defendant. Several other witnesses testified that they were neighbors or they stopped by on the night in question and observed nothing unusual. Finally, defendant testified that he never touched the victim and she was retaliating against him for failing to pay attention to her. Defendant admitted that he was alone in the room with the victim that night and that he had a knife, although he claimed he only used the knife to cut food. " '[W]eigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony,' " and according due deference to the jury's opportunity to observe the witnesses' demeanor and evaluate their credibility (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Gibson*, 2 AD3d 969, 971 [2003], *lv denied* 1 NY3d 627 [2004]; *People v Plaisted*, 2 AD3d 906, 908 [2003], *lv denied* 2 NY3d 744 [2004]), the verdict was not against the weight of the evidence.

The prosecution was permitted to impeach defendant's girlfriend with her prior written statement to police. Although the People called her as their witness, when defense counsel exceeded the scope of the direct examination the girlfriend became a defense witness "properly subject to impeachment by the People" (*People v Dolan*, 172 AD2d 68, 76 [1991], *lv denied* 79 NY2d 946 [1992]; *see People v Maerling*, 64 NY2d 134, 141 [1984]).* Nevertheless, the prior inconsistent statement was admissible only for impeachment purposes, not as affirmative evidence of guilt or defendant's propensity to commit crimes (*see People v Carroll*, 37 AD2d 1015, 1016 [1971]). Defense counsel's representation was deficient because he failed to object to the admission of this testimony or request any limiting instructions either when the testimony was first elicited, when the prosecutor quoted it in her summation or in the final charge

---

* Our holding does not imply that the prosecution then had free reign to question the girlfriend regarding every portion of her statement. For example, her declaration that "I think he might have done it," in reference to the incident for which he was on trial, was inadmissible speculation.

to the jury (*see People v Greene*, 306 AD2d 639, 642-643 [2003], *lv denied* 100 NY2d 594 [2003]; *People v Langlois*, 265 AD2d 683, 684 [1999]).

Even though defense counsel failed to request cautionary instructions, County Court should have advised the jury of the limited purpose for which such testimony was being received, in order to minimize the prejudice to defendant (*see People v Greene, supra* at 642-643; *People v Carroll, supra* at 1016; *compare* CPL 60.35 [2]). The failure to so instruct the jury at the time the evidence was received and again in the final charge "was error which heightened the danger of the jury receiving said evidence as proof of defendant's propensity to commit the crimes charged. In a case such as this, where the finding of guilt rests squarely on the jury's assessment of the credibility of the victim and defendant, we cannot say that the error was harmless and did not affect the jury's verdict. Such errors 'seriously impinged upon defendant's right to a fair trial' " (*People v Greene, supra* at 643, quoting *People v Intelisano*, 188 AD2d 881, 883 [1992]). This is especially true considering that, in summation, the prosecutor told the jury that the girlfriend's written statement at issue was her most truthful version of what happened that night and quoted and summarized it, perhaps leading the jury to believe that it should consider this as evidence of guilt rather than only to determine the girlfriend's credibility (*see People v Butts*, 177 AD2d 782, 783 [1991]). The lack of limiting instructions of any kind at any point requires reversal in the interest of justice, notwithstanding counsel's failure to properly preserve this issue by requesting instructions or objecting to the court's failure to so charge (*see People v Greene, supra* at 643; *People v Butts, supra* at 783).

Based on our reversal, we need not address any of defendant's other arguments, none of which are persuasive.

Crew III, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of Tioga County for further proceedings not inconsistent with this Court's decision.